USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/18/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
    THE MOUNT SINAI HOSPITAL,

                                 Plaintiff,          17 Civ. 7408 (LGS)

              -against-                        **OPINION AND ORDER**

    CROSSROADS HEALTCHARE
    MANAGEMENT LIMITED LIABILITY
    COMPANY and ALLIED WELFARE FUND
    LOCAL 338 PLAN OF BENEFITS,

                                 Defendants.
------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

This action, removed from the Supreme Court of the State of New York, New York County, concerns payment for an operation performed at Mount Sinai Hospital ("Mount Sinai"). Plaintiff Mount Sinai moves to remand the case to state court. For the following reasons, the motion to remand is granted.

**I. BACKGROUND**

Defendant Allied Welfare Fund Local 338 Plan of Benefits ("Allied") is a self-insured employee welfare benefit plan that provides health benefits to individuals who work for certain employers. Allied maintains an office in Nassau County, New York. The Allied Welfare Fund Summary Plan Description Plan A ("SPD") is the document that governs the administration of the claim at issue. The SPD requires that all hospitals seeking payment from the fund obtain pre-admission certification and continued stay review. Per the SPD, failure to obtain pre-admission certification will lead to a 50% reduction in payment. Defendant Crossroads Healthcare Management LCC ("Crossroads") is a third-party administrator and healthcare management company, which has agreed with Allied to administer the Allied fund. Allied also contracts with MagnaCare Administrative Services, LLC ("MagnaCare"), so that fund participants can access

1

doctors and hospitals that are part of MagnaCare's network at a discounted rate. Mount Sinai is one of the hospitals in that network, and it contracts with MagnaCare to provide healthcare services at agreed upon prices.

E.D. was a participant in Allied's benefits plan. On December 21, 2014, E.D. was transferred from Saint Luke's Hospital to Mount Sinai for emergency surgery. When E.D. arrived at Mount Sinai, he was already in a coma, and he died in the hospital two days later without ever regaining consciousness.

Mount Sinai submitted a UB-04 claim form to Crossroads, which stated (via a box with a "Y" inserted for "yes") that E.D. had assigned his benefits under the Allied plan to Mount Sinai. Mount Sinai attests that it is the hospital's "regular practice . . . to obtain an assignment of benefits, which is why all UB-04s indicate benefits were assigned, but there are instances when a patient has not been asked to assign his/her benefits or cannot do so."

Allied and Crossroads paid Mount Sinai $ 47,440.26, or half the billed amount of $94,880.52, discounting by 50% on account of the failure to receive precertification authorization. Mount Sinai states that it is owed the price it had negotiated with MagnaCare for the type of surgery E.D. received, $664,727.46.

## II. LEGAL STANDARDS

### A. Removal

Under 28 U.S.C. § 1441, "[t]he defendant, as the party seeking removal and asserting federal jurisdiction, bears the burden of demonstrating that the district court has original jurisdiction." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc*., 857 F.3d 141, 145 (2d Cir. 2017). Federal courts are directed to "construe removal statutes strictly and resolve doubts in favor of remand." *Purdue Pharma L.P. v Kentucky*, 704 F.3d 208, 220 (2d Cir. 2013). Accordingly, Crossroads and Allied have the burden of proving that the case should not be remanded.

In this instance, the Complaint raises only state law claims, and the parties are not diverse. Consequentially, the sole basis for federal jurisdiction -- which was the basis for removal -- is if Mount Sinai's state law claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.

### B. ERISA Preemption

In *Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004), the Supreme Court established a two-prong test for determining whether ERISA preempts state law claims. Under that test, ERISA displaces a state law claim where: "(1) an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B) and (2) where no other independent legal duty is implicated by a defendant's actions . . . ." *Id.* at 210 (numbering added). The "*Davila* test is conjunctive -- a state-law claim is completely preempted by ERISA only if both prongs of the test are satisfied." *McCulloch Orthopaedic*, 857 F.3d at 146 (citing *Montefiore Med. Ctr. v. Teamsters Local* 272, 642 F.3d 321, 328 (2d Cir. 2011)).

The Second Circuit has divided the first prong of the *Davila* test into two subparts. *McCulloch Orthopaedic*, 857 F.3d at 146. Courts are to analyze "(1) whether the plaintiff is the type of party that can bring a claim pursuant to § 502(a)(1)(B) and also (2) whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Id.* (citing *Montefiore,* 642 F.3d at 328).

## III. DISCUSSION

Crossroads and Allied have not shown that Mount Sinai is "the type of party that can bring a claim pursuant to § 502(a)(1)(B)," because Mount Sinai does not have ERISA standing. Under ERISA, only a "beneficiary" -- "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder" -- has standing. 29 U.S.C. § 1002(2)(B)(8).

Ordinarily, that definition of "beneficiaries" is "narrowly construed to permit only the enumerated parties to sue directly for relief." *McCulloch Orthopaedic*, 857 F.3d at 146 (citing *Montefiore Med. Ctr.*, 642 F.3d at 329). However, the Second Circuit has "carved out a narrow exception to the ERISA standing requirements to grant standing to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Id.* (citations omitted).

To fit into this "narrow exception," a healthcare provider must have a valid assignment from the patient. *See McCulloch Orthopaedic*, 857 F.3d at 147 (holding that a doctor lacked ERISA standing where their patient attempted to assign rights to payment in violation of an anti-assignment provision in the patient's healthcare plan); *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013) ("In order for an assignee to prevail on an ERISA claim, however, the assignee must establish the existence of a valid assignment that comports with the terms of the welfare benefits plan."). Consequentially, where "acceptance of an assignment was ineffective -- a legal nullity," no federal jurisdiction exists. *McCulloch Orthopaedic*, 857 F.3d at 147.

In this case, Mount Sinai never received a valid assignment of benefits from E.D. "To assign a claim effectively, the claim's owner must manifest an intention to make the assignee the owner of the claim." *Cortlandt St. Recovery Corp. v. Hellas Telecommunications*, 790 F.3d 411, 418 (2d Cir. 2015). Although an "assignor need not use any particular language to validly assign its claim," a valid assignment requires that "the language manifests the assignor's intention to transfer at least title or ownership." *Id.* (alteration in original) (citation omitted); *accord AXA Equitable Life Ins. Co. v. Bonded Life Fund, LLC,* No. 12 Civ. 5419, 2013 WL 1453267, at *6 (S.D.N.Y. Apr. 9, 2013) ("under New York law, the assigning party must take some action evidencing his/her intent to assign the right, title and interest.").

As a result, a valid assignment requires -- at minimum -- that the assignor be conscious, because a person in a coma cannot manifest intent. From the moment E.D. arrived at Mount

Sinai for emergency surgery, until he died in the hospital two days later, E.D. remained comatose. As he was "unable to communicate because of disease severity," or even breathe without a ventilator, E.D. could not have manifested the intention to transfer his right to healthcare benefits to Mount Sinai. Consequentially, Mount Sinai lacks ERISA standing and no federal jurisdiction exists.

In their opposition brief, Allied and Crossroads argue that because Mount Sinai checked a box indicating that it received an assignment from E.D. on the UB-04 form it submitted, Mount Sinai must have ERISA standing. That argument is incorrect. The hospital's act of checking the box indicating that it had a valid assignment does not necessarily make it so. *See McCulloch*, 857 F.3d at 147 (holding that a doctor lacked a valid assignment for ERISA purposes -- despite checking the box on an insurance form -- because any assignment was received in violation of an anti-assignment provision); *Neuroaxis*, 919 F. Supp. 2d at 359 (same).

Although Mount Sinai may have checked a box indicating the presence of a valid assignment while rushing E.D. into the operating room for emergency surgery, that paperwork miscue does not change the medical reality that E.D. was physically incapable of effectuating a legally valid assignment at the time. Accordingly, ERISA does not preempt the state law claims in this case, and no federal jurisdiction exists.

**IV.    CONCLUSION**

For the foregoing reasons, Mount Sinai's motion to remand is GRANTED. The Clerk of Court is directed to close all open motions and to REMAND this action to the Supreme Court of the State of New York, County of New York.

Dated:      January 18, 2018
            New York, NY

*[signature]*
**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

5